UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | |
|---|---|
| SCIENTEL SOLUTIONS, LLC,<br>      *Plaintiff*,<br><br>v.<br><br>RICHARD SEIFF,<br>      *Defendant*.<br><br>RICHARD SEIFF,<br>      *Counter-Plaintiff*,<br><br>v.<br><br>SCIENTEL SOLUTIONS, LLC and<br>NELSON SANTOS,<br>      *Counter-Defendants*. | Civil Action No. 1:17-CV-00937<br><br>Judge Joan B. Gottschall |

**PLAINTIFF SCIENTEL SOLUTIONS, LLC'S OPPOSITION TO
DEFENDANT RICHARD SEIFF'S RULE 12(b)(6) MOTION TO DISMISS
COUNTS III, IV, AND V OF SCIENTEL SOLUTIONS, LLC'S COMPLAINT**

Plaintiff, Scientel Solutions, LLC ("Scientel"), submits the following response to Defendant, Richard Seiff's ("Seiff") Rule 12(b)(6) Motion to Dismiss Counts III, IV, and V of Scientel's Complaint (ECF No. 23).

## I.     INTRODUCTION

Scientel brought this action on February 3, 2017, after it discovered that Seiff, its former Vice President of Operations, secretly misappropriated hundreds of computer files containing Scientel's trade secrets and other confidential business information in the days before he abruptly resigned on January 13, 2017. Complaint ¶¶ 2-3 (ECF No. 1). Scientel's Complaint alleged five

1

counts: (1) misappropriation of Scientel's trade secrets in violation of the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836; (2) misappropriation of Scientel's trade secrets in violation of the Illinois Trade Secrets Act ("ITSA"), 765 ILCS 1065, *et seq.*; (3) conversion; (4) breach of fiduciary duty; and (5) breach of contract. Complaint ¶¶ 65-103.

Seiff now moves to dismiss the Complaint and, in so doing, relies on immaterial and/or groundless legal arguments. Scientel has pled more than sufficient facts to place Seiff on notice of all of its claims. In addition, the law does not support Seiff's assertions that the ITSA preempts Scientel's conversion and breach of fiduciary duty claims. Accordingly, Seiff's Motion should be denied in its entirety.

## II. STANDARD OF REVIEW

Motions to dismiss pursuant to Rule 12(b)(6) are intended "to test the sufficiency of the complaint, not to decide the merits' of the plaintiff's case." *Ctr. for Dermatology & Skin Cancer, Ltd. v. Burwell*, 770 F.3d 586, 588 (7th Cir. 2014). To survive a Rule 12(b)(6) motion, a complaint need only "contain sufficient factual matter, accepted as true, 'to state a claim to relief that is plausible on its face.'" *Stapleton v. Advocate Health Care Network*, 817 F.3d 517, 521 (7th Cir. 2016) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "Plausibility" in the context of a complaint means that the plaintiff must only include "enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010).

To properly analyze the sufficiency of Scientel's Complaint, this Court must construe the allegations contained therein in the light most favorable to Scientel, accept well-pleaded facts as true, and draw all inferences in Scientel's favor. *Carlson v. CSX Transp., Inc.*, 758 F.3d 819,

826 (7th Cir. 2014). "[I]f it is possible to hypothesize a set of facts that would entitle the plaintiff to relief, consistent with the allegations in the complaint, dismissal under Rule 12(b)(6) is inappropriate." *Fogarty v. City of Chicago*, 2001 WL 946477, at *2 (N.D. Ill. Aug. 20, 2001) (citing *Graehling v. Village of Lombard*, 58 F.3d 295, 297 (7th Cir.1995)).

### III.     ARGUMENTS AND AUTHORITIES

#### A. The ITSA Does Not Preempt Scientel's Conversion Claim.

The ITSA does not preempt Scientel's conversion claim because it does not depend on Seiff's theft of Scientel's trade secrets. Section 8(a) of the ITSA states that "this Act is intended to displace conflicting tort, restitutionary, unfair competition, and other laws of this State providing civil remedies for ***misappropriation of a trade secret***." 765 ILCS 1065/8(a) (emphasis added). Seiff's blanket assertion that "the ITSA preempts all claims of conversion of intangible property," is directly contrary to the plain language of the statute, as well as Seventh Circuit precedent. By its express terms, "[t]he Act does not affect . . . civil remedies that are not based upon misappropriation of a trade secret." 765 ILCS 1065/8(b)(2). In all events, the Seventh Circuit narrowly construed the scope of ITSA preemption in *Hecny Transp., Inc. v. Chu*, 430 F.3d 402 (7th Cir. 2005). Specifically, the Seventh Circuit found that Illinois' ITSA jurisprudence was consistent with "the dominant view [] that claims are foreclosed only when they rest on the conduct that is said to misappropriate trade secrets." *Id.* at 404-05. In other words, ITSA preemption "does not apply to duties imposed by law that are not ***dependent upon the existence of competitively significant secret information***." *Id.* (emphasis added). The test for ITSA preemption is whether Scientel's conversion claim would stand if the information at issue was not trade secret. *RTC Indus., Inc. v. Haddon*, 2007 WL 2743583, at *3 (N.D. Ill. Sept.

3

10, 2007) (citing *Hecny*, 430 F.3d at 405 ("An assertion of trade secret in a customer list does not wipe out claims of theft, fraud, and breach of the duty of loyalty that would be sound even if the customer list were a public record.")).

Contrary to Seiff's assertions, Scientel does not base its conversion claim solely on trade secret information. Scientel's Complaint alleges, rather, that Seiff had access to both trade secret information, as described in Paragraph 20, and other "confidential and sensitive," but not necessarily trade secret, information described in Paragraph 21. Complaint ¶¶ 20 (listing examples of confidential, proprietary, and trade secret information) and 21 ("***In addition to*** the [information described in paragraph 20], Seiff ***also*** had access to confidential and sensitive personnel information relating to prospective employees, and internal templates used for project proposals and official correspondence.") (emphasis added); *see also id.* ¶ 38 (alleging that, "[b]efore he resigned, Seiff used the trust and network access afforded to him as Scientel's employee to pilfer thousands of Scientel's files containing the confidential, proprietary, and trade secret information described in Paragraphs 20 ***and*** 21") (emphasis added).

Courts in this District have applied the Seventh Circuit's narrow interpretation of Section 8 to deny motions to dismiss based on ITSA preemption where, as here, the claims at issue, did not rely on the existence of a trade secret. *See, e.g.*, *CDM Media USA, Inc. v. Simms*, 2015 WL 1399050, at *6 (N.D. Ill. Mar. 25, 2015) (denying motion to dismiss common law misappropriation count because "like the torts of ***conversion***, theft, and ***breach of fiduciary duty***, the tort of common law misappropriation is not necessarily preempted by the [ITSA] since it does not depend on secret information") (emphasis added) (citing *Hecny*, 430 F.3d at 405); *Network Cargo Sys. Int'l, Inc. v. Pappas*, 2014 WL 1674650, at *5 (N.D. Ill. Apr. 25, 2014)

4

(denying motion to dismiss where "[plaintiff's] common law claims implicate legal duties that do not depend on whether its business information ultimately meets the ITSA's definition of a 'trade secret'") (citing *Hecny*, 430 F.3d at 405); *U.S. Gypsum Co. v. LaFarge N. Am., Inc.*, 508 F. Supp. 2d 601, 638 (N.D. Ill. 2007), *adhered to in part on reconsideration*, 2007 WL 2091020 (N.D. Ill. July 18, 2007) (where "state law claims are primarily based on appropriation of information . . . to the extent particular information is not a trade secret, the claim is not preempted").

In his Motion, Seiff attempts to avoid the precedential weight of *Hecny* and its progeny by citing it as a mere "see also," while relying primarily on federal district court cases decided before *Hecny* to support his preemption argument. *See* Motion at 2-3 (citing *Ace Novelty Co. v. Vijuk Equip., Inc.*, 1990 WL 129510, at *3 (N.D. Ill. Aug. 31, 1990); *AutoMed Tech, Inc. v. Eller*, 160 F. Supp. 3d 915, 922 (N.D. Ill. 2001)). Seiff's pre-*Hecny* cases were effectively overruled, and at least are unpersuasive, to the extent they reflect the broad interpretation of ITSA preemption applied by federal courts prior to *Hecny*. *See EBI Holdings, Inc. v. Butler*, 2009 WL 400634, at *4 (C.D. Ill. Feb. 17, 2009) ("The *Hecny* decision marked a departure from the broad preemptive effect that had been applied in prior federal cases interpreting Illinois law. Thus, the pre-*Hecny* cases upon which [defendant] relies are unpersuasive.").

To the extent Seiff's cases are consistent with *Hecny*, they are easily distinguishable because, unlike here, they involved claims for conversion based solely on trade secret information. For example, in *Ace Novelty* (decided fifteen years before *Hecny*), the plaintiff alleged a claim for conversion of "research and development," which consisted of "plans and ideas." *Ace Novelty*, 1990 WL 129510, at *3. The court explained that the ITSA includes in its

5

definition of "trade secret": "technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers." *Id*. The court found that the plaintiff's "research and development," fell within the examples of trade secrets enumerated in the ITSA and held that the exclusive remedy for conversion of such trade secrets lay in the ITSA itself. *Id.* at *4. *See also QSRSoft, Inc. v. Rest. Tech., Inc*, 2006 WL 3196928, at *9-10 (N.D. Ill. Nov. 2, 2006) (conversion claim was preempted where subject information was "identical to the trade secrets" alleged in plaintiff's ITSA Count); *AutoMed Techs.*, 160 F. Supp. 2d at 922 ("ITSA only preempts actions predicated on misuse of *secret* information. Common law claims based on different theories are still permissible.") (emphasis added).

In summary, Scientel has properly alleged a count for conversion of its proprietary information that is confidential to Scientel but not necessarily a trade secret within the meaning of the ITSA. At this stage in this litigation, Scientel does not yet know all of the information that Seiff misappropriated, and it is entitled to discovery to determine which of that information is trade secret and which is non-trade-secret confidential information. Accordingly, Seiff's motion as to Count III must be denied.

### B. Count IV Properly States a Claim for Breach of Fiduciary Duty

Seiff's challenge to Scientel's breach of fiduciary duty claim is plainly premature. This case is before the Court on a motion to dismiss under Rule 12(b), not on summary judgment after a full and fair airing of the relevant facts through discovery. Significantly, nearly every opinion on which Seiff relies in support of his arguments for dismissing Count IV is either a summary judgment or post-trial ruling. *See Learning Curve Toys, L.P. v. Playwood Toys, Inc.*, 1999 WL

529572 at *3 (N.D. Ill. July 20, 1999) (summary judgment); *Thomas & Betts Corp. v. Panduit Corp.*, 108 F. Supp. 2d 968, 971-72 (N.D. 111. 2000) (summary judgment); *Thermodyne FoodServ. Prods., Inc. v. McDonald's Corp.*, 940 F. Supp. 1300, 1309 (N.D. Ill. 1996) (summary judgment); *Voss Eng'g, Inc. v. Voss Indus., Inc.*, 134 Ill. App. 3d 632, 635-636 (Ill. App. Ct. 1985) (post-trial appellate decision). These cases are inapposite as they constitute "summary judgment decisions that addressed not the content of complaints but the evidence needed to take a claim to a jury." *Carlson*, 758 F.3d at 827.

### 1. The ITSA Does Not Preempt Scientel's Breach of Fiduciary Duty Claim.

Seiff argues that Scientel's claim for breach of fiduciary duty (Count IV) is based "upon Seiff's alleged misappropriation of confidential information," and is thus preempted by the ITSA. First, Seiff misapprehends the nature of Scientel's allegations. In this case, Scientel's breach of fiduciary duty claim is not predicated on the misappropriation of its trade secrets. *See* Complaint, Count IV, ¶ 92 ("Defendant was obligated to use Plaintiff's information, ***regardless of whether constituting a trade secret***, only on behalf of Plaintiff for its exclusive benefit.") (emphasis added).

Pursuant to Seventh Circuit and Illinois law, claims such as Count IV that do not depend on the existence of a trade secret, are not preempted by the ITSA. *Hecny*, 430 F.3d at 405 ("The [ITSA] does not apply to duties imposed by law that are not dependent upon the existence of competitively significant secret information, like an agent's duty of loyalty to his or her principal."); *Alpha Sch. Bus Co. v. Wagner*, 391 Ill. App. 3d 722, 737 (Ill. App. Ct. 2009) (breach of fiduciary duty claim alleging improper use of trade secrets among other fiduciary misconduct was "not dependent upon the misappropriation of trade secrets," and thus not

7

preempted); *Traffic Tech, Inc. v. Kreiter*, 2015 WL 9259544, at *9 (N.D. Ill. Dec. 18, 2015) ("[T]he relevant question is whether [the] breach of fiduciary duty claim would stand even if the information that [Defendant] allegedly misappropriated does not constitute trade secrets."); *Montel Aetnastak, Inc. v. Miessen*, 998 F. Supp. 2d 694, 719 (N.D. Ill. 2014) (denying dismissal of breach of fiduciary claims that did not rest solely on the sharing of confidential information); *Combined Metals of Chicago Ltd. v. Airtek, Inc.*, 985 F. Supp. 827, 830 (N.D. Ill. 1997) (denying motion to dismiss, reasoning that fiduciary duty claim based on information that failed to qualify as a trade secret could not be preempted by ITSA).

Again, Seiff relies primarily on pre-*Hecny* opinions in an attempt to bolster his flimsy preemption argument. *See* Motion at 3-4 (collecting cases). At least one court in this District has concluded "*Hecny* departs from the broad preemptive effect applied in these prior cases." *RTC Indus., Inc. v. Haddon*, 2007 WL 2743583, at *3 (N.D. Ill. Sept. 10, 2007) (denying defendant's ITSA preemption claims, which "rel[ied] exclusively on pre-*Hecny* cases," including *Learning Curve Toys, L.P. v. Playwood Toys, Inc*., 1999 WL 529572, *3 (N.D. Ill. July 20, 1999)). Aside from the *de minimis* persuasive value of Seiff's pre-*Hecny* cases, each arises at the summary judgment phase and consequently involved post-discovery evidentiary considerations that are not yet before this Court. *See, e.g.*, *Thomas & Betts Corp.*, 108 F. Supp. 2d at 972 (holding that the ITSA preempted plaintiff's breach of fiduciary duty claim where "[t]he evidence [was] substantial that the confidential sales data and related information that [defendant] allegedly took . . . constitute trade secrets under the statute"); *Thermodyne FoodServ. Prods., Inc.*, 940 F. Supp. at 1309 (granting summary judgment for defendant on preemption grounds because plaintiff failed to demonstrate "underlying factual basis" for breach of fiduciary

duty claim, specifically, that the claim was "premised on conduct other than the misappropriation of [plaintiff's] trade secret").

Seiff points to only a singular post-*Hecny*, pre-discovery case in support of his argument that Scientel's breach of fiduciary duty claim is preempted: *Carpenter v. Aspen Search Advisors, LLC*, 2011 WL 1297733, at * 2 (N.D. Ill. Apr. 5, 2011). That brief opinion, however, does nothing to address the allegations at issue here. The fiduciary duty alleged in *Carpenter* was predicated entirely on a confidentiality agreement. *Id.* at *2. Here, Scientel has alleged that, as a result of his employment, Seiff owed Scientel a duty of loyalty "that prohibited him from actively exploiting his position for his personal benefit, or hindering Plaintiff from carrying out its business." Complaint ¶ 91. Scientel also alleged that Seiff "was obligated to use Plaintiff's information, ***regardless of whether constituting a trade secret***, only on behalf of Plaintiff for its exclusive benefit." *Id.* at ¶ 92 (emphasis added).

Because Seiff's fiduciary duties as Scientel's former Vice President prohibits his use of information that does not qualify as trade secrets, Scientel's breach of fiduciary duty claim is not dependent upon the existence of competitively significant secret information and, therefore, not preempted.

Accordingly, the Court should deny Seiff's motion as to Count IV of Scientel's Complaint, alleging breach of fiduciary duty.

### 2. Seiff Breached His Fiduciary Duties

Seiff halfheartedly asserts that "the Complaint contains nothing more than conclusory allegations that Seiff prepared to compete, which cannot, on its own, support a claim for breach of fiduciary duty." Motion at 4. Declaring a claim "conclusory" is not a proper basis for

dismissal. *Carlson*, 758 F.3d at 830. Indeed, "[a] plaintiff's complaint can plead conclusions so long as these conclusions provide the defendants at least minimal notice of the claim." *Fogarty*, 2001 WL 946477, at * 2 (citing *Jackson v. Marion County*, 66 F.3d 151, 154 (7th Cir. 1995)).

Seiff further claims that "[i]t is well settled under Illinois law that merely preparing to compete does not constitute a breach of a fiduciary duty." Motion at 4. Here again, Seiff musters ancient, immaterial cases, none of which support the dismissal he seeks. *See Voss Eng'g, Inc.*, 134 Ill. App. 3d at 636 (affirming judgment for defendants entered by trial court, which found—***after a full trial on the merits***—that "the evidence was insufficient to show that defendants' activities went beyond these preliminary planning stages or that they commenced business while still employed by plaintiff"); *Radiac Abrasives, Inc.*, 177 Ill. App. 3d at 637–38 ("[A]n agent is not entitled to solicit customers for [a] rival business before the end of his employment, nor can he properly do other similar acts in direct competition with the employer's business").

In all events, Scientel has alleged far more than mere preparation. Specifically, as stated in the Complaint, Seiff breached his fiduciary duties of loyalty and good faith to Scientel when he "accessed, copied, and took information belong to Plaintiff without a valid purpose or reason in Plaintiff's interest . . . [and] attempted to conceal his misconduct from Plaintiff's detection." Complaint ¶¶ 91, 92.

Scientel has sufficiently stated a claim for breach of fiduciary duty. Seiff's motion to dismiss Count IV must, therefore, be denied.

## C. Count V Properly States a Claim for Breach of Contract

Seiff asserts, without reference to any supporting legal authority, that the Employee Handbook, by its own terms, "is not a contract, agreement or document that can be read to confer any contractual rights whatsoever on any person," and thus "cannot form the basis of [Scientel's] breach of contract claim." Motion at 6. Seiff's argument is based on his own misinterpretation of a single provision in the Employee Handbook, which states:

> Neither this handbook nor any other company guidelines, policies or practices creates an *employment contract*, agreement, or confers any contractual rights whatsoever.

*Id.* (emphasis added). Read plainly, the subject provision creates neither a contract of employment nor any other *rights for the employee*. The Employee Handbook does, however, impose *obligations upon the employee* with regard to the employee's treatment of Scientel's confidential information and access to its internal data networks. *See, e.g.*, Complaint ¶ 29 ("[E]mployees *may not* use the Company's communication and computer systems in violation of any law including, but not limited to, those related to copyrights and software piracy."); *id.* at ¶ 30 ("Employees *will not disclose* confidential information . . ."). For agreeing to perform the obligations laid out in the Employee Handbook, employees receive due consideration in the form of continued employment with Scientel. *See id.* at ¶ 31 ("An employee who violates either policy is subject to disciplinary action, including termination."). The Employee Handbook thus forms a valid and enforceable contract.[1]

---

[1] In all events, the Employee Handbook makes it unmistakably clear that as a senior executive, Seiff's fiduciary duties included protecting Scientel's confidential information, and that he certainly was *not* authorized to take and use Scientel's confidential information.

The allegations in the Complaint set forth sufficient facts to state a claim for breach of contract. Accordingly, Seiff's motion as to Count V must be denied.

## IV. CONCLUSION

For all the foregoing reasons, Scientel respectfully requests that this Court deny Seiff's motion to dismiss.

Dated: March 24, 2017

Respectfully submitted,

SCIENTEL SOLUTIONS, LLC

By its attorneys,

 /s/ Edward J. Naughton
Edward J. Naughton
BROWN RUDNICK LLP
One Financial Center
Boston, MA 02111
Phone: 617-856-8567
Fax: 617-856-8201
enaughton@brownrudnick.com

**CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b) and Northern District of Illinois Local Rule 5.5, counsel for Plaintiff Scientel Solutions, LLC certifies that on March 24, 2017, a true and correct copy of the foregoing *Opposition to Defendant, Richard Seiff's Rule 12(b)(6) Motion to Dismiss Counts III, IV, and V of Scientel's Complaint* was electronically filed with the Clerk of Court through the ECF system, and will be sent electronically to all counsel of record as identified on the Notice of Electronic Filing (NEF).

Dated: March 24, 2017          Respectfully submitted,

SCIENTEL SOLUTIONS, LLC

By its attorneys,

/s/ Edward J. Naughton
Edward J. Naughton
BROWN RUDNICK LLP
One Financial Center
Boston, MA 02111
Phone: 617-856-8567
Fax: 617-856-8201
enaughton@brownrudnick.com