UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
Eastern Division

| | |
|---|---|
| SCIENTEL SOLUTIONS, LLC,<br>    *Plaintiff,*<br><br>v.<br><br>RICHARD SEIFF,<br>    *Defendant.*<br><br>RICHARD SEIFF,<br>    *Counter-Plaintiff,*<br><br>v.<br><br>SCIENTEL SOLUTIONS, LLC and<br>NELSON SANTOS,<br>    *Counter-Defendants.* | Civil Action No. 1:17-CV-00937<br><br>Judge Joan B. Gottschall |

**COUNTER-DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF
FED. R. CIV. P. 12(b)(1) AND 12(b)(6) MOTION TO DISMISS COUNTERCLAIM
(COUNTS I-II) OF DEFENDANT/COUNTER-PLAINTIFF**

Plaintiff/Counter-Defendant, Scientel Solutions, LLC ("Scientel") and Counter-Defendant Nelson Santos ("Santos") (collectively, "Counter-Defendants") submit this Reply Memorandum in support of their Motion to Dismiss the Counterclaim of Defendant/Counter-Plaintiff, Richard Seiff ("Seiff") (the "Motion").[1]

## I. INTRODUCTION

Seiff's arguments cannot save his Counterclaim. The Motion demonstrated that this Court lacks subject matter jurisdiction over Seiff's two state-law counts, one under the IWPCA

---

[1] Capitalized terms have the meanings ascribed to them in the Motion.

1

(Count I) and one for promissory estoppel (Count II), because both arise out of facts that are entirely different from the facts on which Scientel's claims are based. Scientel's DTSA claim rests upon the facts, mostly admitted, establishing Seiff's unauthorized use and theft of Scientel's trade secrets and confidential information. Seiff's Counterclaim, by contrast, rests upon facts regarding Seiff's entitlement, if any, to a bonus payment. Seiff insists that there is a common nucleus of fact because both claims relate generally to his employment, but the controlling cases have consistently rejected this argument. An employment relationship is far too general to be an "operative fact;" operative facts are "proof-oriented," *Berg v. BCS Fin. Corp.*, 372 F. Supp. 2d 1080, 1093 (N.D. Ill. 2005), and must be "highly relevant." *Hadad v. World Fuel Servs., Inc.*, No. 13 C 3802, 2013 WL 6498894, at *4 (N.D. Ill. Dec. 11, 2013).

Even if this Court could exercise supplemental jurisdiction, Seiff's Counterclaim does not state cognizable claims for promissory estoppel or under the IWPCA. In his Opposition, Seiff glosses his allegations in the hope of creating a new narrative of the underlying facts that might save his claims, but that new narrative is not supported by the allegations in his Counterclaim and must be rejected.

Accordingly, Scientel and Santos respectfully request that this Court dismiss Count I and Count II of Seiff's Counterclaim pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6).

## II. ARGUMENT

### A. Seiff's Opposition Confirms That This Court Lacks Supplemental Jurisdiction Over Seiff's Counterclaim.

Seiff has not remotely satisfied his burden to show that his Counterclaim and Scientel's DTSA claim arise out of a "common nucleus of operative fact," which is required for this Court

to exercise supplemental jurisdiction. To satisfy the "common nucleus" requirement, Seiff's IWPCA and promissory estoppel counts must be based on the same *factual allegations* as the DTSA claim, and those common factual allegations must be "highly relevant" to the determination of both the DTSA claim and Seiff's Counterclaim. *See, e.g.*, *Hadad*, 2013 WL 6498894, at *4; *see also Berg*, 372 F. Supp. 2d at 1093 ("'[o]perative fact,' as the term itself demonstrates, is a proof-oriented concept") (citation omitted).

That requirement is not satisfied here. Seiff's IWPCA and promissory estoppel counts are based upon facts concerning the terms of his offer letter and his eligibility to receive a bonus payment from Scientel. *See* Counterclaim ¶¶ 9-15. Scientel's DTSA claim has nothing to do with that narrow issue; rather, it is based upon facts relating to Seiff's misappropriation of Scientel's trade-secret and confidential information. *See* Complaint ¶¶ 65-77. As shown in the Motion, Seiff's claims are connected to Scientel's only tenuously, by the existence of an employment relationship. This kind of general connection, which is part of the factual background but not highly relevant or "proof-oriented," is insufficient to create supplemental jurisdiction over Seiff's Counterclaim. *See, e.g.*, *Berg*, 372 F. Supp. 2d at 1093 ("[T]hat these claims emerged out of the same factual background or from Berg's general employment relationship with BCS is insufficient."); *see also Wilhelm v. TLC Lawn Care, Inc.*, No. 07-cv-2465, 2008 WL 640733, *3 (D. Kan. Mar. 6, 2008).[2]

---

[2] Seiff attempts to distinguish (at 4-5) the cases cited in the Motion – *Villareal v. El Chile, Inc.*, 601 F. Supp. 2d 1011, 1014 (N.D. Ill. 2009), *Berg v. BCS Fin. Corp.*, 372 F. Supp. 2d 1080, 1093 (N.D. Ill. 2005), and *Wilhelm v. TLC Lawn Care, Inc.*, 2008 WL 640733, *3 (D. Kan. Mar. 6, 2008) – which stand for the proposition that an employment relationship alone is insufficient to establish supplemental jurisdiction. While Seiff does not dispute the law, he argues that this action is different because it "involves substantial issues of fact regarding the nature and terms of the employment relationship." Opp.

In the hope of salvaging his Counterclaim, Seiff urges this Court to exercise supplemental jurisdiction because "issues relating to the scope and terms of Seiff's employment relationship with Scientel. . . are essential to the resolution" of both his Counterclaim and Scientel's DTSA claim. Opp. at 3. Seiff identifies the allegations in Scientel's Complaint that Seiff had no legitimate job-related need to access the Scientel information that he stole, and claims that these allegations somehow form part of the same factual nucleus as the allegations in Seiff's Counterclaim regarding Seiff's eligibility to receive a bonus payment. *Id.* at 3-4 (citing Complaint ¶¶ 2, 41-43, 49-51).

There is no merit to Seiff's claim, legally or factually. His argument that "issues relating to the scope and terms of Seiff's employment relationship with Scientel" were "highly relevant" to the resolution of the claims is simply a repackaging of the arguments, repeatedly rejected, that an employment relationship will create supplemental jurisdiction. *See, e.g.*, *Berg*, 372 F. Supp. 2d at 1093 ("[S]upplemental jurisdiction does not exist where the federal and state claims merely share a factual background."). Seiff cites several cases (at 4-5) to support his argument, but those cases are easily distinguished: each one involved claims that derived from the same underlying *conduct*, beyond merely an employment relationship.[3]

---

at 5. As discussed more fully below, even if true, this is not sufficient to establish supplemental jurisdiction. A common nucleus of operative fact exists only if there are specific *facts* shared by the claims that are highly relevant to the determination of both (whether related to the nature and scope of the employment relationship or not). Here, the claims are not based on any common facts, much less common facts that are operative to the claims. The only connection between them is the mere presence of the employment relationship, which is just like *Villareal*, *Berg*, *and Wilhelm*. Seiff has not shown (or alleged) otherwise.

[3] *Friedman, Eisenstein, Raemer & Schwartz v. Afterman*, 599 F. Supp. 902, 904 (N.D. Ill. 1984) (supplemental jurisdiction exercised over state claims because copyright claim and state claims all arose

4

Here, Seiff has not identified a single fact that is both common and operative to the claims. Instead, Seiff actually identifies *different* factual allegations relevant to each of the claims – *e.g.*, allegations in Scientel's Complaint regarding whether Seiff had a need to access Scientel information while employed at Scientel (which is not even determinative of Scientel's DTSA claim, *see* Complaint ¶¶ 65-77), and allegations in Seiff's Counterclaim regarding whether Scientel made an unequivocal promise to pay Seiff a bonus. Opp. at 3. This is insufficient to establish supplemental jurisdiction over Seiff's Counterclaim. *See, e.g.*, *Hadad*, 2013 WL 6498894, at *4 (declining to exercise supplemental jurisdiction over state law battery claim because the factual allegations were not "highly relevant" to the determination of the FLSA claim and declining jurisdiction had no effect on the adjudication of the FLSA claim); *Eager v. Commonwealth Edison Co.*, 187 F. Supp. 2d 1033, 1040 (N.D. Ill. 2002) (dismissing the plaintiff's claims for assault, battery, and negligent infliction of emotional distress because "it [was] not the case that the 'factual allegations regarding incidents of physical assault and battery

---

out of the same conduct – plaintiffs' act of distributing a newsletter called "Accounting & Auditing Update Service" to its clients); *Shoup v. Shoup Mfg., Inc.*, No. 10-CV-2086, 2010 WL 3724765, at *4 (C.D. Ill. Sept. 16, 2010) (supplemental jurisdiction exercised over state law counterclaims because all claims required a determination of who owned the relevant patents, and determination of ownership of one patent relevant to determination of ownership of other(s)); *Goodman v. Bd. of Trustees of Cmty. Coll. Dist. 524*, 511 F. Supp. 602, 605 (N.D. Ill. 1981) (supplemental jurisdiction existed over a breach of contract claim where the contract consisted of an affirmative action program that was allegedly breached by a discriminatory failure to promote because the same conduct gave rise to the Title VII claim and the defendants' defense to both federal and state claims was the same); *Sawyer v. Columbia Coll.*, No. 09-CV-6962, 2010 WL 3081260, *6 (N.D. Ill. Aug. 5, 2010) (supplemental jurisdiction existed over state assault and battery claims because the same conduct – the assault and battery of student – formed the basis of sexual harassment claim); *Rekhi v. Wildwood Indus.*, Inc., 816 F. Supp. 1308, 1309 (C.D. Ill. 1992) (claims arose from the same alleged nonpayment of wages and benefits owed); *Emanuel v. Rolling in the Dough, Inc.*, No. 10 C 2270, 2010 WL 4627661, at *2 (N.D. Ill. Nov. 2, 2010) (whether an employment relationship existed between plaintiff and defendant was an operative fact critical to the determination of both plaintiff's claim for recovery of unpaid wages and defendant's claim against the third-party manager charged with hiring or allowing plaintiff to work against instructions of the company).

... [were] highly relevant to the determination of whether a hostile work environment existed'").

Seiff's Counterclaim does not even attempt to assert that his claims arise from the same conduct and facts as Scientel's claims. The dismissal of the Counterclaim would have no effect on the adjudication of Scientel's DTSA claim, and vice versa. *See Eager*, 187 F. Supp. 2d at 1040. Accordingly, the Court should dismiss both counts of Seiff's Counterclaim.

### B. Seiff Claim for Violation of the IWPCA (Count I) Should Be Dismissed.

Even if this Court could exercise jurisdiction over Seiff's Counterclaim, Seiff's IWCPA claim still fails. First, the allegations show, and Seiff's Opposition concedes, that the payment of the alleged bonus was conditioned on Scientel's performance. Opp. at 6; Counterclaim ¶ 9. As shown in the Motion (at 9), this is fatal to Seiff's IWPCA claim as a matter of law: a bonus conditioned on performance is not owed compensation within the meaning of the IWPCA. *O'Leary v. Accretive Health, Inc.*, No. 09 C 1428, 2010 WL 234869, at *6 (N.D. Ill. Jan. 19, 2010), *aff'd*, 657 F.3d 625 (7th Cir. 2011) ("A contract to pay a bonus depending on whether the employer's annual sales increased does not entitle the employee to the bonus; the bonus is not guaranteed."); *McLaughlin v. Sternberg Lanterns, Inc.*, 395 Ill. App. 3d 536, 544 (2009), *aff'g*, No. 07 C 368, 2008 WL 8181971 (Ill. Cir. Ct. Aug. 6, 2008) (holding that plaintiff was not entitled to bonus under IWPCA where "language in the parties' contract was not an unequivocal guarantee that the plaintiff would receive the bonus as compensation," rather, "bonus was clearly conditional" on company's performance); *see also* 56 Ill. Admin. Code § 300.500 (distinguishing "discretionary bonuses," which are bonuses based on indefinite terms such as "performance," from "earned bonuses," which may be recovered under the IWPCA when there is an unequivocal promise to pay and all conditions are satisfied). Seiff fails to respond to this argument, and thus

acquiesces to it. *Wojtas v. Capital Guardian Tr., Co.*, 477 F.3d 924, 929 (7th Cir. 2007), *aff'g*, No. 05-C-317-S, 2005 WL 2129096 (W.D. Wis. Aug. 31, 2005) ("A failure to oppose an argument permits an inference of acquiescence and 'acquiescence operates as a waiver.'") (citation omitted). Accordingly, Seiff's IWCPA claim must be dismissed. *See, e.g.*, *Green v. Charter One Bank, N.A.*, 640 F. Supp. 2d 998, 1005 (N.D. Ill. 2009) (dismissing count from complaint where the plaintiff did not address the defendant's argument in its opposition) (citing *Wojtas*, 477 F.3d at 929).

Second, Seiff's IWPCA claim also fails because, as shown in the Motion (at 8-9), the allegations and the incorporated Offer Letter[4] show that Seiff was merely ***eligible***, but not entitled, to receive a bonus. *Hess v. Bresney*, 784 F.3d 1154, 1162 (7th Cir. 2015), aff'g, No. 3:09-cv-03334, 2014 WL 1282572 (C.D. Ill. Mar. 28, 2014).[5] Admitting that the Offer Letter (and the mere eligibility to receive a bonus) cannot support his IWPCA claim, Seiff pulls out a new argument – that his IWPCA claim is not, in fact, based on the Offer Letter, Opp. at 6, but on some vaguely described conversation that supposedly occurred at some time *after* Seiff signed the Offer Letter. Opp. at 6.

Putting aside that Seiff's argument fails because it still involves a conditional bonus, not one that is guaranteed, Seiff's newly-alleged "fact" is not supported by the allegations in Seiff's Counterclaim or the express terms of the Offer Letter that it incorporated. Seiff's Counterclaim

---

[4] Seiff does not dispute that the Offer Letter is incorporated by reference into his Counterclaim.

[5] Seiff tries to distinguish *Hess* by arguing that, there, the contract stated that Hess was merely "eligible" for a bonus, and here, although the Offer Letter provides that Seiff also is merely "eligible" for a bonus, it also contemplates that the parties would agree to terms of Seiff's bonus after execution of the Offer Letter. As discussed *supra* note 8, the Offer Letter does not contemplate that the parties would later modify Seiff's *entitlement* to a bonus. *Hess* is directly on point.

7

does not allege *any* facts to support the existence of this definitive agreement, including any facts to show that the parties even discussed Seiff's bonus on more than one occasion, or at any time other than when Scientel offered employment to Seiff (via the Offer Letter) in September 2011. *See* Counterclaim ¶ 9. Indeed, Seiff's conclusory allegations actually support the opposite conclusion – that the agreement upon which Seiff's IWPCA claim is based occurred ***"[a]t the time that Seiff was offered employment with Scientel*** [on or about September 11, 2011]," via the Offer Letter. *Id.* (emphasis added). In paragraph 9 of this Counterclaim, Seiff expressly incorporates the Offer Letter by reference and alleges facts that mirror the clear language of the Offer Letter: "Seiff was formerly hired by Nelson as Scientel's Vice President of Operations on or about September 21, 2011. At the time that Seiff was offered employment with Scientel, he was offered a starting annual base salary of $110,000, plus payment of a Management By Objectives ('MOB') [sic] bonus of twenty percent (20%) of his base salary, to be paid if Seiff was employed by Scientel at the end of each calendar year and if Scientel met its MOB [sic] annual profit targets and objectives." [6]

Seiff's new allegation in his Opposition, that he reached an oral agreement with Scientel after he executed the Offer Letter, is directly contradicted but the allegations in his Counterclaim. There, Seiff alleges that he accepted Scientel's offer of employment ***in reliance*** on Scientel's alleged promise of a bonus. Counterclaim ¶ 28 ("Seiff took multiple actions in reliance on [the

---

[6] Seiff's allegations that he received bonuses in other years during the time that he was employed by Scientel also are insufficient to support his IWPCA claim. *Stark v. PPM Am., Inc.*, 354 F.3d 666, 672 (7th Cir. 2004), *aff'g*, No. 01 C 1494, 2003 WL 21223268 (N.D. Ill. May 23, 2003) (holding that IWCPA claim fails in the absence of employment contract or agreement setting out the terms of the bonus, and employee cannot use the employer's past practice of paying the bonus to create the contract); *see also Harris v. Cent. Garden & Pet Co.*, No. 09 C 2354, 2011 WL 3290334, at *8 (N.D. Ill. Aug. 1, 2011).

8

promise 'to pay Seiff twenty percent (20%) of his annual base salary as a year-end MOB [sic] bonus'], including accepting employment with Scientel…."). If the alleged promise was made only after he signed the Offer Letter, Seiff obviously could not have relied on the promise to accept the offer.[7] Indeed, the Offer Letter expressly states that it "constitute[d] [Scientel's] complete offer…." to Seiff. Santos Decl., Ex. 1. Accordingly, the only agreement that Seiff could have reasonably relied upon in deciding to accept employment at Scientel, pursuant to paragraph 28 of the Counterclaim, was the Offer Letter, which made clear that Seiff was not promised a bonus, but was only eligible for one. *Id.* (Seiff would be only "*eligible* for a 20% MBO bonus, based on company goals.") (emphasis added); *see, e.g.*, *Chrysler Rail Transp. Corp. v. Ind. Hi-Rail Corp.*, No. 93 C 5140, 1995 WL 221804, at *2 (N.D. Ill. Apr. 11, 1995) ("[B]ecause the exhibits in this case contradict [plaintiff's] allegations of fraudulent inducement, the court finds that [plaintiff] has failed to sufficiently establish such a claim.").[8]

In sum, the allegations in Seiff's own Counterclaim establish that the only agreement alleged between the parties is the Offer Letter, which Seiff admits cannot support his IWPCA

---

[7] If the Court were somehow inclined to credit Seiff's new version of events, it should still dismiss Seiff's promissory estoppel counterclaim, because he could not have accepted employment in detrimental reliance upon an oral promise if the promise was not made until after he accepted the offer.

[8] Seiff argues that his new theory – that Scientel promised to pay Seiff the bonus after Seiff executed the Offer Letter – does *not* conflict with the terms of the Offer Letter because that letter states that Seiff would be eligible for a "20% MOB [sic] bonus based on company goals, **to be defined within the first 90 days of [Seiff's] employment**." Opp. at 6 (citing Offer Letter) (alteration added). Seiff contends that, based on the bolded text, the parties contemplated reaching an agreement *after* execution of the Offer Letter to "define" Seiff's discretionary bonus as a mandatory bonus. *Id.* Seiff is wrong; the bolded text is not susceptible to such an interpretation. Rather, the plain meaning of the sentence makes clear that the bolded text modifies "company goals," which are the items logically susceptible to being "defined." It is nonsensical to suggest that Seiff's eligibility for a bonus, which is a term of his employment, could or would be "defined" to mean that the bonus is mandatory.

9

claim. Consequently, the Court should dismiss the IWPCA claim. *See Smith v. C.H. James Rest. Holdings, L.L.C.*, No. 11 C 5545, 2012 WL 255806, at *2 (N.D. Ill. Jan. 26, 2012) (dismissing IWPCA claim because, although complaint included conclusory allegations regarding an agreement, it did not include sufficient factual allegations to support the existence of the required contract or agreement).[9]

### C. Seiff's Claim for Promissory Estoppel (Count II) Should Be Dismissed.

Seiff's Opposition also fails to cure the deficiencies in his promissory estoppel count. First, Seiff cannot remedy his failure to allege an unambiguous promise by Scientel to pay Seiff the alleged bonus by asserting the same argument discussed above – that Scientel made a promise to Seiff to pay Seiff the disputed bonus *after* Seiff executed the Offer Letter. *See* Opp. at 8. For the reasons discussed above, this argument fails. The only "promise" supported by Seiff's allegations in the Counterclaim is the one set out in the Offer Letter, which provides mere *eligibility* to receive a bonus and, as a matter of law, cannot establish an unequivocal promise to pay said bonus. *See, e.g.*, *Moore v. Nutrasweet Co.*, 836 F. Supp. 1387, 1404-05 (N.D. Ill. 1993), *as supplemented*, (Nov. 15, 1993). Accordingly, for this reason alone, Seiff's promissory estoppel count must be dismissed. *See David v. Bayview Loan Servicing, LLC*, No. 15-cv-9274, 2016 WL 1719805, at *5 (N.D. Ill. Apr. 29, 2016) (dismissing promissory estoppel claim because the plaintiff did not identify any statements that could be construed as an unambiguous promise).

---

[9] Seiff cites several cases (at 7) to argue that an employee has a right to recover an "earned bonus" under the IWPCA when there is an unequivocal promise by the employer to pay the employee the bonus. These cases are irrelevant because, as shown, Seiff has not alleged sufficient facts to show that Scientel made an unequivocal promise to pay Seiff any bonus.

Second, Seiff has offered no logical reason that Seiff's reliance on an alleged promise to receive a bonus after his employment ended could be reasonable in light of the Offer Letter's express disclaimer of post-termination bonus payments. Mot. at 11. Seiff's only response is that the Offer Letter – the same document that expressly disclaims payment of a bonus to Seiff post-termination – carves out an exception for payments that are "otherwise provided by law." Opp. at 8; Santos Decl., Ex. 1 ("[N]othing in this letter shall be construed as an agreement, either express or implied to pay you any compensation or grant you any benefit beyond the end of your employment with the Company, except as otherwise provided by law."). But Seiff's reliance on this carve out is misplaced because he has not shown that he is entitled to any bonus under *any* law. This circular argument cannot save Seiff's claim.

Accordingly, Seiff's promissory estoppel must be dismissed.

### III.   CONCLUSION

For all the foregoing reasons, Scientel respectfully requests that this Court enter an order dismissing Seiff's Counterclaim (Counts I-II) with prejudice.

Dated: April 28, 2017                    Respectfully submitted,

SCIENTEL SOLUTIONS, LLC and
NELSON SANTOS

By their attorneys,

 /s/ Edward J. Naughton
Edward J. Naughton
BROWN RUDNICK LLP
One Financial Center
Boston, MA 02111
Phone: 617-856-8567
Fax: 617-856-8201
enaughton@brownrudnick.com

## **CERTIFICATE OF SERVICE**

Pursuant to Federal Rule of Civil Procedure 5(b) and Northern District of Illinois Local Rule 5.5, counsel for Counter-Defendants Scientel Solutions, LLC and Nelson Santos certifies that on April 28, 2017, a true and correct copy of the foregoing ***Counter-Defendants' Reply Memorandum in support of Fed. R. Civ. P. 12(b)(1) and 12(b)(6) Motion to Dismiss Counterclaim of Defendant/Counter-Plaintiff*** was electronically filed with the Clerk of Court through the ECF system, and will be sent electronically to all counsel of record as identified on the Notice of Electronic Filing (NEF).

Dated: April 28, 2017                  Respectfully submitted,

                                          SCIENTEL SOLUTIONS, LLC and
                                          NELSON SANTOS

                                          By their attorneys,

                                          /s/ Edward J. Naughton
                                          Edward J. Naughton
                                          BROWN RUDNICK LLP
                                          One Financial Center
                                          Boston, MA 02111
                                          Phone: 617-856-8567
                                          Fax: 617-856-8201
                                          enaughton@brownrudnick.com